FILED
15-0544
7/27/2015 1:03:31 PM
tex-6233643
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

No. 15-0544

IN THE

SUPREME COURT

OF TEXAS

_____

**IN THE INTEREST OF M.C. AND T.C., CHILDREN**

MAURICE C.
Petitioner

Texas Department of Family and Protective Services
Respondent

_____

On Petition for Review from the
Fourth Court of Appeals, San Antonio, Texas
Cause Number 04-14-00893-CV

_____

**Petition for Review**

_____

GERALD URETSKY
Attorney at Law
406 Brees Boulevard
San Antonio, Texas 78209-4828
Phone:  (210) 820-8294
Fax:  (210) 822-8735
Email:  uretsky@msn.com
Bar No. 20414600

/s/Gerald Uretsky
ATTORNEY FOR PETITIONER

<u>IN THE SUPREME COURT OF TEXAS</u>

In the Interest of M.C. AND T.C.,

NO. 15-0544

Children

## **<u>PETITION FOR REVIEW</u>**

TO THE HONORABLE SUPREME COURT OF TEXAS:

COMES NOW the Petitioner, MAURICE C., and respectfully moves the Court to review the Memorandum Opinion and Judgment of the Fourth Court of Appeals in Appeal No. 04-14-00893-CV, signed on June 10, 2015, and in support of said Petition would show the Court as follows:

## Identity of Parties and Counsel

Pursuant to TEX. R. APP. P. ANN. 38.1(a):

**Parties:**

(1)    **MAURICE C.** is the father of the children the subject of this appeal. He is the Appellant and was a Respondent in the trial court.  He is now the Petitioner, was the Appellant in the court of appeals, and was a Respondent in the trial court.  He is referred to as "Appellant" herein.

(2)    **CYNTHIA T.** is the mother of the children the subject of this suit. She was a Respondent in the trial court and, to the undersigned's knowledge, did not appeal.

(3)    **THE TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES**, 3635 S.E. Military Dr., San Antonio, Texas 78223, is the Appellee and was the Petitioner in the trial court.

(4)    **M.C.** and **T.C.** currently reside in Texas Department of Family and Protective Services placement and are the children the subject of this appeal.

**Trial Attorneys:**

(1)    MAURICE C., father, was represented by **MARGARET SCOTT**, P.O. Box 708695, San Antonio, Texas 78278.

(2)  CYNTHIA T., mother, was represented by **MATTHEW FINCH**, 115 E Travis #1500, San Antonio, Texas 78205.

(3)  The Texas Department of Family and Protective Services was represented by **KRISTEN CALVERT**, Assistant District Attorney, 100 Dolorosa St., 3rd Floor, San Antonio, Texas 78205.

(4)  The children were represented by **LAURA DURAN**, 719 S. St. Mary's Street, Texas 78205.

**Appellate Attorneys:**

(1)  MAURICE C., father, is represented by **GERALD URETSKY**, 406 Brees Boulevard, San Antonio, Texas 78209-4828.

(2)  The Texas Department of Family and Protective Services is represented by the **BEXAR COUNTY DISTRICT ATTORNEY'S OFFICE**, Appellate Section, 101 W. Nueva Street, 4th Floor, San Antonio, Texas 78205.

(3)  The children are represented by **LAURA DURAN**, 719 S. St. Mary's Street, Texas 78205.

# Table of Contents

Page

Identity of Parties and Counsel . . . . . . 3

Table of Contents . . . . . . . . 4

Table of Authorities . . . . . . . 5

Statement of the Case . . . . . . . 8

Issues Presented . . . . . . . . 8

Statement of Facts . . . . . . . 10

Argument . . . . . . . . . 16

    First Issue - Restated . . . . . . 16

    Second Issue - Restated . . . . . . 18

    Third Issue - Restated . . . . . . 20

    Fourth Issue - Restated . . . . . . 23

Conclusion and Prayer . . . . . . . 30

Certificate of Compliance . . . . . . 32

Index to Appendix . . . . . . . 32

Certificate of Service . . . . . . . 32

## Table of Authorities

Page

### Statutes

TEX. FAM. CODE §161.001 . . . . . . . 8

TEX. FAM. CODE §263.101 . . . . . . . 21

TEX. FAM. CODE §263.307 . . . . . . . 23

TEX. R. APP. P. ANN. 38.1 . . . . . . 3

TEX. R. EVID. 801 . . . . . . . . 17

TEX. R. EVID. 802 . . . . . . . . 17

### Cases

*In re C.H.*, 89 S.W.3d 17 (Tex. 2002) . . . . . 25

*In re E.D.*, 419 S.W.3d 615 (Tex. App. – San Antonio 2013, pet. denied) 25

*In re E.Y.*, No. 13-13-00203-CV, 2013 Tex. App. Lexis 8139 (Tex. . 23
App. – Corpus Christi, July 3, 2013) *mem. op.*

*In re R.R.*, 209 S.W.3d 112 (Tex. 2006) . . . . . 23

*Holley v. Adams*, 544 S.W.2d 367 (Tex. 1976) . . . . 25

*In re J.J.O.*, 131 S.W.3d 618 (Tex. App. – Fort Worth 2004, no pet.) . 20

*In the Interest of M.R.*, No. 07-13-00440-CV, 2014 Tex. App. Lexis . 20
6220 *mem. op.* (Tex. App. – Amarillo, June 9, 2014)

*Liu v. Tex. Dep't of Family & Protective Servs.*, 273 S.W.3d 785 (Tex. 21
App. – Houston[1st Dist.] 2008, no pet.)

*Wiley v. Spratlan*, 543 S.W.2d 349 (Tex. 1976) . . . . 23

## Statement of the Case

This is an accelerated appeal of the trial court's order terminating Appellant's parental rights. The suit was filed by Appellee, Texas Department of Family and Protective Services ("the Department"), as a child abuse-neglect case, with one subject child. A jury was waived, and the case was tried to the court (RR 1). At the close of evidence and argument, the court terminated Appellant's parental rights to his minor child. This appeal followed. The clerk's record is designated "CR." The reporter's record is designated "RR."

## Issues Presented

### First Issue

Whether the evidence is legally or factually insufficient to support the court's finding, pursuant to section 161.001(1)(D) of the Texas Family Code, that Appellant knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger their physical or emotional well-being.

## Second Issue

Whether the evidence is legally or factually insufficient to support the court's finding, pursuant to section 161.001(1)(N) of the Texas Family Code, that Appellant constructively abandoned the children who have been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services or an authorized agency for not less than six months and: (1) the Department or authorized agency has made reasonable efforts to return the children to Appellant; (2) Appellant has not regularly visited or maintained significant contact with the children; and (3) Appellant has demonstrated an inability to provide the children with a safe environment.

## Third Issue

Whether the evidence is legally or factually insufficient to support the court's finding, pursuant to section 161.001(1)(O) of the Texas Family Code, that Appellant failed to comply with the provisions of a court order that specifically established the actions necessary for Appellant to obtain the return of the children who have been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from Appellant under Chapter 262 for the abuse or neglect of the children.

## Fourth Issue

Whether the evidence is legally or factually insufficient to support the trial court's finding that the termination of Appellant's parental rights, pursuant to section 161.001(2) of the Texas Family Code, is in children's best interest.

## Statement of Facts

I.     Procedural Background

This is an accelerated appeal from the trial court's order terminating Appellant's parental rights to his children (CR 143-149).

The Department began this litigation on January 22, 2014, when it filed its Original Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship. The cause number was 2014-PA-00142, and the case was docketed into the 288th Judicial District Court of Bexar County, Texas (CR 1-13). The petition alleged Appellant to be the father of the child (CR 2). The petition sought termination of Appellant's parental rights and those of the mother (CR 1-13).

An emergency order, taking the children into custody does not appear in the Clerk's Record, but temporary orders following an adversary hearing were made, which placed the children in the temporary managing conservatorship of the

Department and granted their parents temporary possessory conservatorship (CR 23-35).

Family Service Plans were created for the parents (CR 75-92). The required status hearing (CR 94-99) and permanency hearings were conducted (CR 114-120; 136-141).

A trial before the court was held before Hon. Charles Montemayor on December 11, 2014; that same day a final order terminating the father's parental rights was signed (CR 143-149).

Appellant's trial counsel timely filed a Notice of Appeal on December 19, 2014 (CR 150-151).

II.    Factual Background

At trial, the parties called only one witness, whose testimony is summarized below. Her name appears in italic, underlined font at the left margin for ease of reference. Bracketed language has been added by Appellant's counsel. Appellant did not appear, and his trial counsel had not had contact with him since he had moved to Houston, causing her to have some concerns about him being able to have family services in Houston [there was no testimony that services were set up there], so she announced Not Ready and asked for a continuance (RR 4), as did the mother's counsel (RR 5). The children's ad litem responded that the case was at

the ten-month mark, the children are doing really well in their placement with their maternal grandmother (RR 5). The court denied Appellant's Not Ready announcement because: the children are ages seven and four; Appellant had personal notice or actual notice of the trial setting; and, the law requires that these cases have to be resolved within a year (RR 5-6).

*Jennifer Iruegas, the Department's current caseworker*

She took over this case after it was transferred from another caseworker (RR 7) [but did not say when]. M.C. is now eight years old, and T.C. is five (RR 7). They have resided with their maternal grandparents for the entire case, approximately ten months, and are doing very well; their attachment to their grandmother has continued to grow (RR 8) [but the same was not mentioned regarding their grandfather]. This placement will lead to permanency, and the grandparents will able to continue to meet the needs of these children in the future (RR 8-9) [but said needs were not identified]. Ms. Iruegas has no concerns with the grandmother being protective in this case (RR 14) [but the same was not mentioned regarding their grandfather].

The children were removed from Appellant's care after the Department received a referral in November 2013 alleging neglectful supervision of the children; the parents were allegedly using drugs, and at one point, the mother

12

became intoxicated with alcohol and Xanax and proceeded to attempt to slit her own throat with a knife in front of her children, telling them good-bye and she's tired of being in the world (RR 9). Appellant's trial counsel objected to this hearsay, but the court overruled her objection, because the caseworker was charged with familiarizing herself with the knowledge of the contents of the file and the circumstances that led to the Department's intervention (RR 9). This incident occurred while the parents resided together, but Appellant was not present at the time of the incident, which was a violation of the safety plan, because he was not supposed to leave the mother unsupervised with the children (RR 9-10). Appellant was aware of the mother's mental health issues (RR 10). The children are in "trauma informed" therapy because of this incident (RR 10).

Family Service Plans were created for the parents, but neither completed theirs (RR 10). The parents visited their children two times a month for an hour (RR 10-11) as ordered by the court (RR 14-15). In September 2014, the parents stopped visiting their children (RR 11). So, in total, they had about 15 out of the 20 visits ordered in this case (RR 11).

Appellant moved to Houston in October 2014 (RR 14). That same month, Ms. Iruegas reminded him of the court dates, and he informed her that he would be present (RR 14). She also asked him if he had intentions of continuing his family

13

service plan services, at which time he told her he did not (RR 14); he was angry and had lost hope and claimed that it didn't matter if he did his services or not (RR 16-17).

The parents have done nothing to demonstrate that they can provide their children with a safe and stable home (RR 12) [but see services/tasks completed]. The department made reasonable efforts to work with the parents (RR 12) [conclusory].

It is in the children's best interest for the parental rights of the parents to be terminated (RR 12) [conclusory].

The parents were given the opportunity to visit with the children, supervised by the grandparents, at the grandparents' home, and did so pretty regularly initially; then Appellant stopped visiting his children when he moved to Houston (RR 15). Ms. Iruegas felt that Appellant has abandoned his duty as a father with his children because he hasn't seen them in the last few months (RR 17).

In regard to completing the tasks on his Family Service Plan, Appellant was required to complete a parenting class, a drug assessment with drug treatment, a psychological evaluation, maintain housing and maintain employment (RR 18). Regarding the employment task, Appellant was employed on and off during this case, but Ms. Iruegas did not know if he's currently employed in Houston (RR 17-

19). Appellant had housing, did his drug assessment, did the psychological evaluation and completed parenting classes (RR 19-20). However, he was unsuccessfully discharged from individual counseling for noncompliance (missing several sessions), and he did not maintain employment, but Ms. Iruegas was unaware of whether Appellant is currently employed, and even during his periods of unemployment, Appellant continued to look for more work (RR 20). His therapist was concerned about his lack of planning and his lack of ability to care for and ensure the safety of his children and not leave them alone with their mother (RR 21). Nevertheless, there was no reason that the maternal grandparents, with whom the children are placed, should not be given conservatorship and Appellant be given possessory conservatorship of his children [admission] (RR 22).

Prior to the Department filing its petition to start this case, the Department was working with the parents in a family-based setting in which it was it highlighted to Appellant that he shouldn't leave their children alone with their mother because of her mental health problems, and he violated that requirement (RR 27-28). Appellant has done nothing to demonstrate that he will never make a decision like that again (RR 28). The department holds Appellant responsible for bailing out on his children and leaving to another city instead of staying here to finish services (RR 28).

**First Issue - Restated**

**Whether the evidence is legally or factually insufficient to support the court's finding, pursuant to section 161.001(1)(D) of the Texas Family Code, that Appellant knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger their physical or emotional well-being.**

The sole witness testified that the children were removed from Appellant's care after the Department received a referral in November 2013 alleging neglectful supervision of the children; the parents were allegedly using drugs, and at one point, the mother became intoxicated with alcohol and Xanax and proceeded to attempt to slit her own throat with a knife in front of her children, telling them good-bye and she's tired of being in the world (RR 9). Appellant's trial counsel objected to this testimony as hearsay, but the court overruled her objection because the caseworker was charged with familiarizing herself with the knowledge of the contents of the file and the circumstances that led to the Department's intervention (RR 9).

"Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter

16

asserted. TEX. R. EVID. 801(d).  Hearsay is not admissible except as provided by statute or the Texas Rules of Evidence or by other rules prescribed pursuant to statutory authority. TEX. R. EVID. 802.  Ms. Iruegas, the sole witness, did not testify that she observed this alleged incident, nor did she testify as to when she became involved in this case; as noted above, she simply said "the Department received a referral," (RR 9).  This clarifies that the court was aware that the witness was repeating a statement made by someone else, made out of court.  The identity of the witness to this alleged statement/incident is not disclosed in the reporter's record.  In addition, the statement was made to prove the truth of the matter asserted, which formed the sole basis of the court's finding that Appellant knowingly placed or knowingly allowed the children to remain in conditions or surroundings (i.e., the mother's alleged suicide threat in front of her children) which endangered their physical or emotional well-being.

Ms. Iruegas testified that the incident occurred while the parents resided together, but Appellant was not present at the time of the incident, which was a violation of the safety plan, because he was not supposed to leave the mother unsupervised with the children (RR 9-10); and, Appellant was aware of the mother's mental health issues (RR 10).

17

The court's reason for overruling the hearsay objection was invalid.  There is no exception to the hearsay rule that provides that a statement is not hearsay, and is thus admissible, if the agency employee testifying has a duty to familiarize herself with the agency's file and the circumstances that led to the Department's intervention.  Therefore, the court erred in overruling the hearsay objection.  This error was harmful because this was the only evidence regarding this ground of termination of Appellant's parental rights.

Finally, assuming for the sake of argument that the statement is not hearsay, it seems that it would have been more accurate for the court to make a finding under section 161.001(1)(E) of the Texas Family Code (endangering conduct), than under section 161.001(1)(D) (endangering conditions), because it would have been the mother's conduct, not the conditions in which the children were found, that would have formed the factual basis for the Department's removal of them from the parents.

### Second Issue - Restated

Whether the evidence is legally or factually insufficient to support the court's finding, pursuant to section 161.001(1)(N) of the Texas Family Code, that Appellant constructively abandoned the children who have been in the permanent or temporary managing conservatorship of the Department of Family and

18

Protective Services or an authorized agency for not less than six months and: (1) the Department or authorized agency has made reasonable efforts to return the children to Appellant; (2) Appellant has not regularly visited or maintained significant contact with the children; and (3) Appellant has demonstrated an inability to provide the children with a safe environment.

The second element of proof, above (2), required to establish the "constructive abandonment" ground for terminating parental rights is that the parent has not regularly visited or maintained significant contact with the children. The Department failed to prove that Appellant had done so. To the contrary, Ms. Iruegas testified that: [1] the parents visited their children two times a month for an hour (RR 10-11) as ordered by the court (RR 14-15); [2] the parents visited the children, supervised by the grandparents, at the grandparents' home, and did so pretty regularly initially; [3] in September 2014, the parents stopped visiting their children (RR 11); [4] so, in total, they had about 15 out of the 20 visits ordered in this case (RR 11). This means that Appellant participated in seventy-five percent of the visits with his children that the court allowed. Appellant submits that this is regular visitation and significant contact with his children by the Department's own admission. Such testimony is insufficient to establish that Appellant did not regularly visit his children or maintain significant contact with them. *Cf. In re*

19

*J.J.O.*, 131 S.W.3d 618, 629 (Tex. App.—Fort Worth 2004, no pet.) (mother participated in only twelve visits with child during a nine-month period); *In the Interest of M.R.*, No. 07-13-00440-CV, 2014 Tex. App. Lexis 6220 *mem. op.* (Tex. App.—Amarillo, June 9, 2014) (mother saw children five times in 33 months); *In re E.Y.*, No. 13-13-00203-CV, 2013 Tex. App. Lexis 8139 (Tex. App.—Corpus Christi, July 3, 2013) *mem. op.* (father did not visit or maintain contact with the child for over eleven months).

### **Third Issue - Restated**

Whether the evidence is legally or factually insufficient to support the court's finding, pursuant to section 161.001(1)(O) of the Texas Family Code, that Appellant failed to comply with the provisions of a court order that specifically established the actions necessary for Appellant to obtain the return of the children who have been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from Appellant under Chapter 262 for the abuse or neglect of the children.

In child abuse and neglect cases, the Department prepares a Family Service Plan enumerating the services that a parent must complete toward meeting the Department's goals for the parent prior to reunification of the children with the

parent. TEX. FAM. CODE §263.101. A Family Service Plan is designed to reunify a parent with a child who has been removed from the parent by the Department. *Liu v. Tex. Dep't of Family & Protective Servs.*, 273 S.W.3d 785, 795 (Tex. App.–Houston[1st Dist.] 2008, no pet.). The Family Service Plan is usually incorporated into the Status Hearing Order and Pretrial Scheduling Order, TEX. FAM. CODE §263.106, to become the order referenced in section 161.001(1)(O) of the Texas Family Code, for which, noncompliance therewith may become a ground for termination of parental rights; said incorporation was done in this case (CR 96-97).

Ms. Iruegas testified that Family Service Plans were created for the parents, but neither completed theirs (RR 10). But she did not testify that she made all the referrals and authorizations necessary for Appellant to participate in said services; nor did she give any examples or instances of the her efforts to reunify Appellant's children with him. She stated Appellant moved to Houston in October 2014 (RR 14) and that same month, she also asked him if he had intentions of continuing his family service plan services, at which time he told her he did not (RR 14); he was angry and had lost hope and claimed that it didn't matter if he did his family services or not (RR 16-17). But, there was no testimony that family services were even made available to Appellant in Houston. Nor was there any testimony that a

caseworker in the Houston area had been assigned to work with Appellant. Ms. Iruegas only offered the conclusory testimony that the Department made reasonable efforts to work with the parents (RR 12).

Ms. Iruegas testified that the parents had done nothing to demonstrate that they can provide their children with a safe and stable home (RR 12). However, this testimony ignores her other testimony regarding the family services/tasks that Appellant completed, described below, which can be viewed as efforts to provide their children with a safe and stable home.

Regarding the employment task, Ms. Iruegas stated Appellant was employed on and off during this case, but Ms. Iruegas did not know if he's currently employed in Houston (RR 17-19), and even during his periods of unemployment, Appellant continued to look for more work (RR 20). She acknowledged that Appellant had housing, did his drug assessment, did the psychological evaluation and completed parenting classes (RR 19-20). She stated, however, that he was unsuccessfully discharged from individual counseling for noncompliance (missing several sessions) (RR 20). She said Appellant's therapist was concerned about his lack of planning and his lack of ability to care for and ensure the safety of his children and not leave them alone with their mother (RR 21).

## Fourth Issue - Restated

Whether the evidence is legally or factually insufficient to support the trial court's finding that the termination of Appellant's parental rights, pursuant to section 161.001(2) of the Texas Family Code, is in the children's best interest.

This issue concerns the second prong of the termination test: the child's best interest, pursuant to Section 161.001(2) of the Family Code. Proof of the first prong of the termination test, under Section 161.001(1) ("grounds"), without more, will not support a termination; unless there is a finding of best interest, there can be no termination. *Wiley v. Spratlan*, 543 S.W.2d at 351.

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, when the court considers factors related to the best interest of the child, "the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." TEX. FAM. CODE §263.307(a). In determining whether a child's parent is willing and able to provide the child with a safe environment, the court should consider: (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the

23

Department or other agency; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. *Id.* §263.307(b).

In addition, "[a]n extended number of factors have been considered by the courts in ascertaining the best interest of the child. Included among these are the following: (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now

and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or the proposed placement; (H) the acts or omissions of the parents which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent [citations omitted]. This list is by no means exhaustive, but does indicate a number of considerations which either have been or would appear to be pertinent." *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

Also, evidence that proves one or more statutory grounds for termination may constitute evidence illustrating that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002) (holding same evidence may be probative of both section 161.001(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). A trier of fact may measure a parent's future conduct by her past conduct and determine whether termination of parental rights is in the child's best interest. *Id.*

Reviewing the evidence in light of the foregoing factors reveals its insufficiency. Ms. Iruegas offered only the conclusory statement that it was in the children's best interest for the parental rights of the parents to be terminated (RR 12). However, she also acknowledged that there was no reason that the maternal grandparents, with whom the children are placed, should not be given managing conservatorship and Appellant be given possessory conservatorship of his children (RR 22). This seems contrary to the Department's position that it is in the children's best interest that Appellant's parental rights be terminated.

**Section 263.307(b) Factors**

Other than the ages of the two children, the only evidence that was adduced regarding any physical or mental vulnerabilities of either of the children was their participation in "trauma informed" therapy because of their mother's alleged suicide attempt in front them (RR 10). This was also the only evidence of the magnitude, frequency, and circumstances of the harm, if any, to the two children. And, as argued above, this hearsay testimony was wrongfully and harmfully admitted over trial counsel's objection. The reporter's record contains no evidence of the frequency and nature of out-of-home placements, if any, which may have occurred before they were removed from their parents' possession in November 2013. There is no evidence in the reporter's record that either of the children have

26

been the victim of repeated harm after the initial report and intervention by the Department, or whether either of them have expressed any fear of living in or returning to their home. Ms. Iruegas stated that Appellant was unsuccessfully discharged from individual counseling for noncompliance (missing several sessions)(RR 20); however, there is no other evidence regarding whether the children, the maternal grandparents, other family members, or others who have access to the children's home have undergone psychiatric, psychological, or developmental evaluations. There is no evidence of a history of abusive or assaultive conduct by the children's family or others who have access to the children's home. There is no evidence of any willingness and ability of the children's family to seek out, accept, and complete counseling services, to cooperate with and facilitate the Department's close supervision, the willingness and ability of the children's family to effect positive environmental and personal changes within a reasonable period of time, whether the grandparents demonstrate adequate parenting skills, and whether an adequate social support system consisting of an extended family and friends is available to the children. Ms. Iruegas testified only that the children have resided with their maternal grandparents for the entire case, approximately ten months, and are doing very well; their attachment to their grandmother has continued to grow (RR 8) [but the

27

same was not mentioned regarding their grandfather]. She believed this placement will lead to permanency, and the grandparents will able to continue to meet the needs of these children in the future (RR 8-9) [but said needs were not identified]. Ms. Iruegas has no concerns with the grandmother being protective in this case (RR 14) [but the same was not mentioned regarding their grandfather].

**Holley Factors**

*(A) the desires of the child*

There was no evidence of the desire of either child.

*(B) the emotional and physical needs of the child now and in the future*

There was no evidence of this factor other than Ms. Iruegas testimony that [1] the children were participating in "trauma informed" therapy because of their mother's alleged suicide attempt in front them (RR 10) and [2] the maternal grandparents will able to continue to meet the needs of these children in the future (RR 8-9) [but said needs were not identified].

*(C) the emotional and physical danger to the child now and in the future*

The caseworker testified that the children have resided with their maternal grandparents for the entire case, approximately ten months, and are doing very well; their attachment to their grandmother has continued to grow (RR 8), but the same was not mentioned regarding their grandfather.

28

***(D) the parental abilities of the individuals seeking custody***

There was no testimony regarding this factor other than has already been argued above.

***(E) the programs available to assist these individuals to promote the best interest of the child***

There was no testimony regarding this factor.

***(F) the plans for the child by these individuals or by the agency seeking custody;***

There was almost no testimony regarding this factor. The caseworker testified that the current placement of the children with their maternal grandparents will lead to permanency (RR 8-9), and the grandparents will able to continue to meet the needs of these children in the future (RR 8-9), but said needs were not identified.

***(G) the stability of the home or the proposed placement***

There was almost no testimony regarding this factor. The caseworker testified that she has no concerns with the grandmother being protective in this case (RR 14), but the same was not mentioned regarding their grandfather.

***(H) the acts or omissions of the parents which may indicate that the existing parent-child relationship is not a proper one***

Ms. Iruegas testified that prior to the Department filing its petition to start this case, the Department was working with the parents in a family-based setting in

which it was it highlighted to Appellant that he shouldn't leave their children alone with their mother because of her mental health problems, and he violated that requirement (RR 27-28) when Appellant was not present at the time of the mother's alleged suicide threat, which was a violation of the safety plan, because he was not supposed to leave the mother unsupervised with the children (RR 9-10). She said Appellant was aware of the mother's mental health issues (RR 10).

*(I) any excuse for the acts or omissions of the parent*

There was no testimony regarding this factor.

## Conclusion and Prayer

In light of the lack of the evidence concerning the grounds for termination and that it is in the children's best interest that Appellant's parental rights be terminated, Appellant submits that a factfinder could not "reasonably have formed a firm belief or conviction" that Appellant's parental rights should be terminated. Therefore, this case should be reversed and/or rendered in Appellant's favor or remanded for a new trial.

There was no testimony regarding how long the sole witness had been a caseworker or how long she had been working on this case. Therefore, the weight to be given her testimony is difficult to determine. She did testify that in October 2014, she reminded Appellant of his court dates, and he informed her that he

30

would be present (RR 14). The record is silent as to reason for Appellant's absence. Given that this case was only at the ten-month mark (RR 5), a short continuance to obtain Appellant's presence at trial does not seem unreasonable.

WHEREFORE, PREMISES CONSIDERED, Appellant prays this Court allow briefing and consider reversing the Court of Appeals judgment affirming the trial court's termination of his parental rights and enter a judgment [1] denying the Department's petition, [2] denying the Department's petition and appointing Appellant as possessory conservator of his children, or [3] denying the Department's petition and remanding the case for a new trial.

Respectfully submitted,

/s/ Gerald Uretsky
GERALD URETSKY
406 Brees Boulevard
San Antonio, Texas 78209-4828
Phone: (210) 820-8294
Fax: (210) 822-8735
Email: uretsky@msn.com
Bar No. 20414600
ATTORNEY FOR APPELLANT
(On Appeal Only)

31

## Certificate of Compliance

I HEREBY CERTIFY, pursuant to Texas Rules of Appellate Procedure 9.4, (i) and (j), that, according to the Microsoft Word software used to compose this document, the number of words in designated portion of this document is 4,496.

/s/ Gerald Uretsky
GERALD URETSKY
ATTORNEY FOR APPELLANT

## Index to Appendix

Order of Termination . . . . . . . TAB 1

Memorandum Opinion . . . . . . . TAB 2

Judgment . . . . . . . . . TAB 3

Order Appointing Attorney Ad Litem for Father . . . TAB 4
Order to Withdraw and Substitute Attorney Ad Litem
Order of Indigence

## Certificate of Service

I HEREBY CERTIFY that a true and correct copy of the above and foregoing Petition for Review has been sent, via e-service to the BEXAR COUNTY DISTRICT ATTORNEY, lscott@bexar.org, Appellate Section, 300 Dolorosa St., 4th Floor, San Antonio, Texas 78205 on July 24, 2015.

/s/ Gerald Uretsky
GERALD URETSKY
ATTORNEY FOR APPELLANT

# TAB 1



NOTICE: THIS DOCUMENT
CONTAINS SENSITIVE DATA

C9/3.06                   **CAUSE NO. 2014-PA-00142**

| | | |
|---|---|---|
| **IN THE INTEREST OF** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **M██████ C██████, ET AL** | § | **BEXAR COUNTY, TEXAS** |
| | § | |
| **CHILDREN** | § | **288TH JUDICIAL DISTRICT** |

## ORDER OF TERMINATION

On __Dec. 11, 2014__, the Court heard this case.

1.    **Appearances**

1.1.    The Department of Family and Protective Services ("the Department") appeared through _Jennifer Imeges_, caseworker, and by attorney, **KRISTEN CALVERT** and announced ready.

1.2.    Respondent Mother **CYNTHIA THOMASON** appeared in person and by attorney of record **MATTHEW FINCH** and announced ready. _overruled_ _nel_

1.3.    Respondent Presumed Father **MAURICE COLLINS** appeared in person and by attorney of record **MARGARET A. SCOTT** and announced ready.

1.4.    **LAURA C. OLIVEIRA DURAN**, appointed by the Court as Attorney and Guardian Ad Litem for the children the subject of this suit, appeared and announced ready.

2.    **Jurisdiction and Service of Process**

2.1.    The Court, having examined the record and heard the evidence and argument of counsel, finds the following:

2.1.1.    a request for identification of a court of continuing, exclusive jurisdiction has been made as required by Section 155.101, Texas Family Code.

2.1.2.    this Court has jurisdiction of this case and of all the parties and that no other court has continuing, exclusive jurisdiction of this case.

2.2.    The Court, having examined the record and heard the evidence and argument of counsel, finds that the State of Texas has jurisdiction to render final orders regarding the children the subject of this suit pursuant to Subchapter C, Chapter 152, Texas Family Code, by virtue of the fact that Texas is the home state of the children.



---

2.3.    The Court finds that all persons entitled to citation were properly cited.

## 3.    Jury

A jury was waived, and all questions of fact and of law were submitted to the Court.

## 4.    Record

*Herminia Torres*

The record of testimony was duly reported by ~~DAVID ZARATE~~ the court reporter for the Associates Judges Court, Room 3.06 of Bexar County.

## 5.    The Children

The Court finds that the following children are the subject of this suit:

5.1.            Name:    M█████ C██████
                Sex:     ████████
                Birth Date: ████████

5.2.            Name:    T█████ C██████
                Sex:     ████████
                Birth Date: ████████

## 6.    Termination of Respondent Mother CYNTHIA THOMASON'S Parental Rights

6.1.    The Court finds by clear and convincing evidence that termination of the parent-child relationship between **CYNTHIA THOMASON** and the children the subject of this suit is in the children's best interest.

6.2.    Further, the Court finds by clear and convincing evidence that **CYNTHIA THOMASON** has:

6.2.1.    knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children, pursuant to § 161.001(1)(D), Texas Family Code;

~~6.2.2.    engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children, pursuant to § 161.001(1)(E), Texas Family Code;~~

6.2.3.    failed to comply with the provisions of a court order that specifically established the actions necessary for the mother to obtain the return of the children who have been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from the parent under Chapter 262 for the abuse or neglect of the children, pursuant to § 161.001(1)(O), Texas Family Code;

6.2.4. The Court finds that **CYNTHIA THOMASON** has a mental or emotional illness or a mental deficiency that renders the mother unable to provide for the physical, emotional, and mental needs of the children, pursuant to § 161.003, Texas Family Code.

*6.2.4 Constructively abandoned the children who have been in the permanent or temporary managing conservatorship of DFPS and: DFPS made reasonable effort to return the children to the parent, the parent has not maintained regular contact with the children and the parent has demonstrated an inability to provide the child with a safe environment, pursuant to § 161.001 (1)(N) Texas Family Code.*

6.2.4.1. The Court finds by clear and convincing evidence that the illness or deficiency, in all reasonable probability, will continue to render the mother unable to provide for the children's needs until the 18th birthday of the children.

6.2.4.2. The Court finds that the Department has been the temporary or permanent managing conservator of the children for the six months preceding the date of the termination hearing pursuant to §161.003, Texas Family Code.

6.2.5. The Court finds that the Department has made reasonable efforts to return the children to the mother.

6.3. **IT IS THEREFORE ORDERED** that the parent-child relationship between **CYNTHIA THOMASON** and the children the subject of this suit is terminated.

7. **Termination of Respondent Father MAURICE COLLINS'S Parental Rights**

7.1. The Court finds by clear and convincing evidence that termination of the parent-child relationship between **MAURICE COLLINS** and the child M▮▮▮ C▮▮▮ AND T▮▮ C▮▮▮, is in the child's best interest.

7.2. Further, the Court finds by clear and convincing evidence that **MAURICE COLLINS** has:

7.2.1. knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children, pursuant to § 161.001(1)(D), Texas Family Code;

7.2.2. engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children, pursuant to § 161.001(1)(E), Texas Family Code;

7.2.2.1. failed to comply with the provisions of a court order that specifically established the actions necessary for the ~~mother~~ *parent* to obtain the return of the children who have been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from the parent under Chapter 262 for the abuse or neglect of the children, pursuant to § 161.001(1)(O), Texas Family Code;

7.2.2.2 *Constructively abandoned his children as set out in § 161.001(1)(N) Texas Family Code.*

7.2.3. The Court finds that the Department has made reasonable efforts to return the children to the father.

7.3. **IT IS THEREFORE ORDERED** that the parent-child relationship between **MAURICE COLLINS** and the child M███████ C███████ **AND** T████ C██████ is terminated.

## 8. Interstate Compact

The Court finds that Petitioner has filed a verified allegation or statement regarding compliance with the Interstate Compact on the Placement of Children as required by § 162.002(b)(1) of the Texas Family Code.

## 9. Managing Conservatorship: M██████ C██████

9.1. The Court finds that the appointment of the Respondents as permanent managing conservator of the children is not in the children's best interest because the appointment would significantly impair children's physical health or emotional development.

9.2. **IT IS ORDERED** that the **DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES** is appointed Permanent Managing Conservator of M██████ C██████, a child the subject of this suit, with the rights and duties specified in § 153.371, Texas Family Code; the Court finding this appointment to be in the best interest of the child.

9.2.1. In addition to these rights and duties, **IT IS ORDERED** that the Department is authorized to consent to the medical care for M██████ C██████ under § 266.004, Texas Family Code.

## 10. Managing Conservatorship: T███ C██████

10.1. The Court finds that the appointment of the Respondents as permanent managing conservator of the children is not in the children's best interest because the appointment would significantly impair children's physical health or emotional development.

10.2. **IT IS ORDERED** that the **DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES** is appointed Permanent Managing Conservator of T███ C██████, a child the subject of this suit, with the rights and duties specified in § 153.371, Texas Family Code; the Court finding this appointment to be in the best interest of the child.

10.2.1. In addition to these rights and duties, **IT IS ORDERED** that the Department is authorized to consent to the medical care for T███S C██████ under § 266.004, Texas Family Code.

**11.     Required Information Regarding the Parties and Children**

11.1.   The children's information is provided above; the information required of each party not exempted from such disclosure is:

11.1.1.                          Name:     CYNTHIA THOMASON
            Driver's License:     XXX-XX-5928

11.1.2.                          Name:     MAURICE COLLINS
            Driver's License:     XXX-XX-4011

11.2.   **IT IS ORDERED** that each parent, who has not previously done so, provide information regarding the medical history of the parent and parent's ancestors on the medical history report form, pursuant to § 161.2021, Texas Family Code.

**12.     Continuation of Court-Ordered Ad Litem or Advocate**

12.1.   The Court finds that the children the subject of this suit will continue in care and this Court will continue to review the placement, progress and welfare of the children.

12.2.   **IT IS THEREFORE ORDERED** that **LAURA C. OLIVEIRA DURAN**, earlier appointed as Attorney and Guardian Ad Litem to represent the best interests of the children, is continued in this relationship until further order of this Court or final disposition of this suit.

**13.     Court Ordered Ad Litem for Parent**

13.1.   **IT IS THEREFORE ORDERED** that **MATTHEW FINCH** earlier appointed to represent **CYNTHIA THOMASON** is relieved of all duties based on a finding of good cause.

13.2.   **IT IS THEREFORE ORDERED** that **MARGARET A. SCOTT** earlier appointed to represent **MAURICE COLLINS** is relieved of all duties based on a finding of good cause.

**14.     Dismissal of Other Court-Ordered Relationships**

Except as otherwise provided in this order, any other existing court-ordered relationships with the children the subject of this suit are hereby terminated and any parties claiming a court-ordered relationship with the children are dismissed from this suit.

**15.     Inheritance Rights**

This Order shall not affect the right of any child to inherit from and through any party.

16. **Denial of Other Relief**

   IT IS ORDERED that all relief requested in this case and not expressly granted is denied.

17. **WARNING: APPEAL OF FINAL ORDER, PURSUANT TO § 263.405, TFC**

   **A PARTY AFFECTED BY THIS ORDER HAS THE RIGHT TO APPEAL. AN APPEAL IN A SUIT IN WHICH TERMINATION OF THE PARENT-CHILD RELATIONSHIP IS SOUGHT IS GOVERNED BY THE PROCEDURES FOR ACCELERATED APPEALS IN CIVIL CASES UNDER THE TEXAS RULES OF APPELLATE PROCEDURE. FAILURE TO FOLLOW THE TEXAS RULES OF APPELLATE PROCEDURE FOR ACCELERATED APPEALS MAY RESULT IN THE DISMISSAL OF THE APPEAL.**

18. **NOTICE TO ANY PEACE OFFICER OF THE STATE OF TEXAS:**

   **YOU MAY USE REASONABLE EFFORTS TO ENFORCE THE TERMS OF CHILD CUSTODY SPECIFIED IN THIS ORDER. A PEACE OFFICER WHO RELIES ON THE TERMS OF A COURT ORDER AND THE OFFICER'S AGENCY ARE ENTITLED TO THE APPLICABLE IMMUNITY AGAINST ANY CLAIM, CIVIL OR OTHERWISE, REGARDING THE OFFICER'S GOOD FAITH ACTS PERFORMED IN THE SCOPE OF THE OFFICER'S DUTIES IN ENFORCING THE TERMS OF THE ORDER THAT RELATE TO CHILD CUSTODY. ANY PERSON WHO KNOWINGLY PRESENTS FOR ENFORCEMENT AN ORDER THAT IS INVALID OR NO LONGER IN EFFECT COMMITS AN OFFENSE THAT MAY BE PUNISHABLE BY CONFINEMENT IN JAIL FOR AS LONG AS TWO YEARS AND A FINE OF AS MUCH AS $10,000.**

   The Court finds that all parties have waived any objections to the hearing by an Associate Judge and do hereby waive their right to de novo review pursuant to Section 201.015 of the Texas Family Code.

   DEC 1 1 2014

   SIGNED this _____ day of _____, 2014.

   _____
   JUDGE PRESIDING
   **CHARLES MONTEMAYOR**
   ASSOCIATE JUDGE

2014-PA-00142 / 288TH

**APPROVED AS TO FORM:**

_____

**KRISTEN CALVERT**
Attorney for Petitioner, Department of Family and Protective Services
Bexar County Courthouse 3rd Floor
100 Dolorosa, 3rd Floor
San Antonio, TX 78205
_email:_ kcalvert@bexar.org
_phone:_ (210) 224-1430
_fax:_ (512) 934-9626
State Bar # 00787188

_____

**Laura C. Oliveira Duran**
Attorney and Guardian Ad Litem for the Children

_____

State Bar # _____

_____

CYNTHIA THOMASON
Mother of the Children

_____

**Matthew Finch**
Attorney for the Mother CYNTHIA THOMASON

_____

State Bar # _____

_____

MAURICE COLLINS
Presumed Father of the Child M█████ C█████ and T███ C█████

_____

**Margaret A. Scott**
Attorney for the Presumed Father MAURICE COLLINS

_____

State Bar # _00795807_

Order of Termination
Page 7

2014-PA-00142 / 288TH
ASAP 2013

# TAB 2



## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00893-CV

**IN THE INTEREST OF M.C.** and T.C.

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2014-PA-00142
Honorable Charles E. Montemayor, Associate Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:        Karen Angelini, Justice
                Rebeca C. Martinez, Justice
                Patricia O. Alvarez, Justice

Delivered and Filed:  June 10, 2015

AFFIRMED

Appellant Maurice C. appeals the trial court's termination of his parental rights to his children, eight-year-old M.C. and five-year-old T.C.[1] After a bench trial, the trial court found by clear and convincing evidence that Maurice C. had (1) knowingly placed or knowingly allowed his children to remain in conditions or surroundings that endangered their physical or emotional well-being (section 161.001(1)(D) grounds); (2) failed to comply with the provisions of a court order that specifically established the actions necessary for Maurice C. to obtain the return of his children who had been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal

---

[1] To protect the privacy of the parties in this case, we identify the children by their initials and the parents by their first names only. *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2014).

from the parent under Chapter 262 for the abuse or neglect of the children (section 161.001(1)(O) grounds); and (3) constructively abandoned his children who had been in the permanent or temporary managing conservatorship of the Department for not less than six months and the Department made reasonable efforts to return the children to Maurice C. (section 161.001(N) grounds). The trial court also found by clear and convincing evidence that termination of Maurice C.'s parental rights was in the children's best interest. On appeal, Maurice C. argues the evidence is legally and factually insufficient to support the above findings by the trial court. He also argues that the trial court erroneously admitted, over his objection, hearsay testimony.

## THE TRIAL

Maurice C. did not appear at trial. His court-appointed attorney stated at the beginning of trial that he had not had contact with Maurice C. since he had moved to Houston. His attorney announced "not ready" and requested a continuance. The Department responded that the case had been pending for ten months and asked the court to proceed to trial. The trial court denied the motion for continuance and trial proceeded.

The Department called as its only witness Jennifer Iruegas, the Department case worker assigned to the case. Iruegas testified that the children were currently residing with their maternal grandparents and had been doing so since the case began. According to Iruegas, the children were doing well with their grandparents and had developed an attachment to them. She testified it would be harmful for the children to be removed from their current placement and that the plan is for this current placement to lead to permanency. When asked about the events leading to the children's removal from their parents, Iruegas began her answer when Maurice C.'s attorney objected:

> Iruegas:  Yes, ma'am. We received a referral – the Department received a referral in November of 2013 alleging neglectful supervision of the children. The parents were allegedly using drugs and at one point –

Maurice C.'s attorney: Judge, I'm going to object as to hearsay unless this caseworker was present and is aware personally of the use of drugs. That's, again, hearsay and I just objected.[2]

Court: Overruled. She's charged with familiarizing herself with the knowledge of the contents of the file and the circumstances that led to CPS intervention. Go.

Iruegas: And at one point the mother did become intoxicated with alcohol and Xanax and began to – well, proceeded to slit – attempt to slit her own throat with a knife in front of her children telling them good-bye and she's tired of being in the world.

Iruegas then testified that when this incident occurred, (1) the mother and Maurice C. had been living together; (2) a safety plan was already in place; (3) Maurice C. was not present, and under the safety plan, he was not supposed to leave the mother unsupervised with the children; and (4) Maurice C. was aware of the mother's mental issues. Iruegas testified that a service plan was created for both parents, and neither had completed their respective service plan. According to Iruegas, both children are "in trauma-informed therapy because of the incident that occurred with their mother inflicting harm to herself in front of them." Iruegas testified that the incident with their mother had left the children with emotional scars. Iruegas then testified that terminating the parental rights of both parents was in the children's best interest.

Iruegas also testified that the parents visited their children about fifteen times during the ten months the case had been pending and had stopped their visits in September 2014, three months before trial. Iruegas testified that the parents had done "nothing" to demonstrate that they can provide the children with a safe and stable home. According to Iruegas, Maurice C. had been living in Houston since October 2014. Iruegas testified that she had spoken with Maurice C. in October 2014 and reminded him of the trial date. She told him that he needed to continue his services in

---

[2] This is the only objection made by Maurice C.'s attorney during Iruegas's testimony. Maurice C.'s attorney did not request a running objection.

order to be able to work toward reunification with his children. She asked him if he intended to continue his services. According to Iruegas, Maurice C. "was angry and he was – it seemed like he had lost hope and claimed that it didn't matter if he did his services or not." Maurice C. told Iruegas that he had recently lost his job and was looking for a new one. Iruegas also testified that Maurice C. was "unsuccessfully discharged from individual counseling for noncompliance and he did not maintain employment." Maurice C. missed several counseling sessions, and according to Iruegas, with regard to Maurice C.'s therapy "[t]here was concern [about] his lack of planning and his lack of ability to care and ensure the safety of his children and not leave them alone with [the mother]." Iruegas testified that Maurice C. had on at least one occasion left the children alone with their mother while he went to work. Iruegas testified that the mother was currently homeless and in September 2014 had been at the psychiatric unit at University Hospital. The mother had become intoxicated and harmed herself, at which time she called the crisis hotline and was taken to University Hospital. The mother had left a voice message with the Department, and according to Iruegas, the mother's message was "completely incoherent" and the mother "was obviously intoxicated by something." According to Iruegas, the mother had been hospitalized twice during the pendency of the case.

Iruegas was asked if Maurice C.'s rights should be terminated because the mother has a mental illness. Iruegas responded, "Along with his inability to care for – to ensure safety for his children, yes." Iruegas testified that in the pre-litigation family-based case, Maurice C. was informed that he could not leave his children alone with the mother because of her mental health problems:

> Q:      Was it the family-based case that ultimately resulted in this case and that Dad violated?
>
> A:      Yes.

Q:      Was it highlighted to the Dad in the family-based case that the reason he shouldn't leave his kids alone with the Mom was because of her mental health problems?

A:      Yes.

Q:      And he violated that?

A:      Yes, ma'am.

When asked what Maurice C. had done to demonstrate that he would not make such a bad decision again, Iruegas replied, "Nothing."

## HEARSAY

Maurice C. argues the trial court erred in overruling his hearsay objection to Iruegas's testimony that the Department received a referral in November 2013 alleging neglectful supervision of the children because the parents were using drugs and at one point, the mother became intoxicated with alcohol and Xanax and attempted to slit her throat with a knife in front of her children. We review the admission of evidence for abuse of discretion. *See Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 638 (Tex. 2009).

Whether or not this testimony was inadmissible hearsay, any error is harmless because Maurice C. did not continue to object to Iruegas's testimony or request a running objection. To obtain the reversal of a judgment based upon an error of the trial court in admission or exclusion of evidence, it must be shown that the trial court did in fact commit error and that the error complained of probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case to the court of appeals. *See* TEX. R. APP. P. 44.1(a); *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009). Any error in excluding evidence is harmless if other admitted evidence reveals the same facts as that which is excluded. *Bryant v. Transcon. Gas Pipe Line Corp.*, 821 S.W.2d 187, 188 (Tex. App.—Houston [14th Dist.] 1991, writ denied); *see Cent. Expressway*, 302 S.W.3d at 870 ("[T]he exclusion or admission is

likely harmless if the evidence was cumulative, or the rest of the evidence was so one-sided that the error likely made no difference in the judgment."). After Maurice C. objected to Iruegas's testimony, Iruegas gave similar testimony without objection. Therefore, any error was harmless.

## SUFFICIENCY OF THE EVIDENCE

Parental rights may be terminated only upon proof of clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(1) of the Texas Family Code, and (2) termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001 (West 2014). Here, the trial court found three grounds supporting termination of Maurice C.'s parental rights under section 161.001(1). Maurice C. argues there is legally and factually insufficient evidence to support all three grounds.

When the legal sufficiency of the evidence is challenged, we look at all the evidence in the light most favorable to the trial court's finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). "To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* (citations omitted). "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (citations omitted). "If, after conducting its legal sufficiency review of the record evidence, a court determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient." *Id.* at 344-45 (citations omitted).

When a parent challenges the factual sufficiency of the evidence on appeal, we look at all the evidence, including disputed or conflicting evidence. *Id.* at 345. "If, in light of the entire record,

the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (citations omitted). In reviewing termination findings for factual sufficiency, we give due deference to the factfinder's findings and do not supplant its judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

With regard to the trial court's finding pursuant to section 161.001(1)(O), Maurice C. argues the evidence is legally and factually insufficient to support the trial court's finding that he failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of his children who had been in the Department's permanent or temporary managing conservatorship for not less than nine months as a result of the children's removal under Chapter 262 for abuse or neglect. At trial, the trial court took judicial notice of the service plan. The service plan required that Maurice C. complete parenting classes, have a drug assessment with drug treatment, complete a psychological evaluation, complete individual counseling, and maintain housing and employment. Maurice C. completed parenting classes, and his drug and psychological assessment. However, he was unsuccessfully discharged from individual counseling for non-compliance because he missed several sessions. According to Iruegas, as a result of the sessions Maurice C. did attend, the therapist was concerned about "his lack of planning and his lack of ability to care and ensure the safety of his children and not leave them alone with [the mother]." Iruegas also testified that he failed to maintain steady employment. He was employed on-and-off during the ten-month pendency of the case. When she talked to him in October, he had lost his job, had moved to Houston, and was looking for a new job.

Maurice C. complains that Iruegas did not testify that she made all the referrals and authorizations necessary for him to participate in services or give any examples of her efforts to reunite him with his children. However, Iruegas did testify that the Department had made

reasonable efforts to work with both parents. She testified that she "reached out to [Maurice C.] several times and on one occasion he did answer the phone." She reminded him of the court dates and told him that he would need to continue with his services in order to work towards reunification with his children. According to Iruegas, Maurice C. was angry and frustrated, stating that he did not believe it mattered if he continued his services. Iruegas testified that she provided Maurice C. with information and the proper authorization to participate in the services. We hold the evidence is legally and factually sufficient to support the trial court's finding pursuant to section 161.001(1)(O).

With regard to the trial court's finding pursuant to section 161.001(1)(D), Maurice C. argues the evidence is legally and factually insufficient that he knowingly placed or knowingly allowed his children to remain in conditions or surroundings that endangered the physical or emotional well-being of the children. *See* TEX. FAM. CODE ANN. § 161.001(1)(D) (West 2014). Subsection D permits termination based on a single act or omission by the parent. *In re R.D.*, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied).

The term "endanger" means "to expose to loss or injury." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re J.J.B.*, No. 04-14-00299-CV, 2014 WL 4218845, at *2 (Tex. App.—San Antonio Aug. 27, 2014, no pet.). Although "'endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *Boyd*, 727 S.W.2d at 533; *see In re J.J.B.*, 2014 WL 4218845, at *2 (explaining that "abusive or violent conduct by a parent or other resident of a child's home can constitute a condition that endangers the child's physical or emotional well-being within the meaning of section 161.001(1)(D)). "Although the parent need not have certain knowledge that an actual injury is occurring, the parent must at least be aware of the potential for danger to the child in such an

environment and must have disregarded that risk." *In re A.S.*, 261 S.W.3d 76, 83 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). At trial, Iruegas testified that Maurice C. was aware of the mother's mental health issues and knew that he was not permitted to leave the children alone with the mother pursuant to the Family Based Safety Plan.[3] He nevertheless left the children alone with the mother. Iruegas testified that the children then witnessed their mother inflict harm upon herself, resulting in the children suffering from "lasting emotional scars" and undergoing trauma-informed therapy. Thus, there was testimony that Maurice C. knew about the danger posed to his children by their mother's mental health problems, was specifically told by the Department that he could not leave the children alone with her, and nonetheless did so. We conclude the evidence is legally and factually sufficient to support termination of Maurice C.'s parental rights on section 161.001(1)(D) grounds.[4]

Maurice C. also argues the evidence is legally and factually insufficient to support the trial court's finding that termination of his parental rights is in his children's best interest. *See* TEX. FAM. CODE ANN. § 161.001(2) (West 2014). There is a strong presumption that the best interest of a child is served by keeping the child with a parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, there is also a presumption that when the court considers factors related to the best interest of the child, "the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a) (West 2014). And, in determining whether the child's parents are willing and able to provide the child with a safe environment, the court should consider the following: the child's age and physical and mental

---

[3] This safety plan was in place prior to the children's removal and is different from the service plan referred to previously.

[4] Because only one ground under section 161.001(1) can support the termination of parental rights and because we have determined that sufficient evidence supported two different grounds under section 161.001(1), we need not determine whether there is sufficient evidence that Maurice C. constructively abandoned his children under section 161.001(1)(N).

vulnerabilities; the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; and whether the child's family demonstrates adequate parenting skills, including providing the child with minimally adequate health and nutritional care, a safe physical home environment, and an understanding of the child's needs and capabilities. *Id.* § 263.307(b). In addition, courts may consider other nonexclusive factors in reviewing the sufficiency of the evidence to support the best interest finding, including (1) the desires of the child, (2) the present and future physical and emotional needs of the child, (3) the present and future emotional and physical danger to the child, (4) the parental abilities of the persons seeking custody, (5) the programs available to assist those persons seeking custody in promoting the best interest of the child, (6) the plans for the child by the individuals or agency seeking custody, (7) the stability of the home or proposed placement, (8) acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate, and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). This list is not exhaustive, and evidence is not required on all of the factors to support a finding terminating a parent's rights. *Id.*; *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

At trial, there was evidence that Maurice C.'s young children had been living with their maternal grandparents for the previous ten months, were doing well, and had formed an attachment that continues to grow. Iruegas testified that it would be harmful for the children to be removed from their maternal grandparents and that the plan was for their current placement to lead to permanency. Iruegas also testified that Maurice C. failed to maintain stable employment, and in the final months before trial, Maurice C. stopped all communication with both his children and the Department. He stopped visiting his children. He was not able to show that he had stable housing.

Maurice C. also failed to complete individual counseling. Meanwhile, his very young children are currently undergoing trauma therapy. We hold there is legally and factually sufficient evidence that termination of Maurice C.'s parental rights is in the children's best interest.

We affirm the trial court's order terminating Maurice C.'s parental rights.

Karen Angelini, Justice

# TAB 3



# Fourth Court of Appeals
## San Antonio, Texas

### JUDGMENT

No. 04-14-00893-CV

**IN THE INTEREST OF M.C.** and T.C.

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2014-PA-00142
Honorable Charles E. Montemayor, Associate Judge Presiding

BEFORE JUSTICE ANGELINI, JUSTICE MARTINEZ, AND JUSTICE ALVAREZ

In accordance with this court's opinion of this date, the trial court's order terminating appellant's parental rights is AFFIRMED. No costs of appeal are assessed against appellant.

SIGNED June 10, 2015.

_Karen Angelini_
Karen Angelini, Justice

# TAB 4

2014PA00142 -D288

C9/3.06 CAUSE NO. _2014PA00142_

| IN THE INTEREST OF | § | IN THE DISTRICT COURT OF |
|---|---|---|
| | § | |
| M▓▓▓ C▓▓▓, ET AL | § | BEXAR COUNTY, TEXAS |
| | § | |
| CHILDREN | § | 288TH JUDICIAL DISTRICT |

## ORDER APPOINTING ATTORNEY AD LITEM FOR FATHER

The Court finds that the immediate appointment of an Attorney *Ad Litem* to represent the interests of **MAURICE C▓▓▓** against whom this suit is brought is required under § 161.003 (b), Texas Family Code.

**IT IS THEREFORE ORDERED** that MARGARET A. SCOTT, a licensed attorney at law of this state, is appointed Attorney *Ad Litem* for **MAURICE C▓▓▓**.

SIGNED this 22nd day of January, 2014.

_____
JUDGE PRESIDING

APPROVED AS TO FORM:

_____
Kristen Calvert
Attorney for Petitioner, Department of Family and Protective Services
Bexar County Court House
100 Dolorosa, 3rd Floor
San Antonio, Texas 78205
Kcalvert@bexar.org
*phone:* (210) 224-1430
*fax:* (210) 224-9887
STATE BAR # 00787188



2014PA00142 -D288

## CAUSE NO. 2014-PA-00142

| | | |
|---|---|---|
| IN THE INTEREST OF | § | IN THE DISTRICT COURT OF |
| M█████ C█████, ET AL | § | 288TH JUDICIAL DISTRICT |
| CHILD(REN) | § | BEXAR COUNTY, TEXAS |

## ORDER TO WITHDRAW AND SUBSTITUTE ATTORNEY AD LITEM FOR APPEAL PURPOSES ONLY

On this date, the foregoing Motion to Withdraw and Substitute Attorney Ad Litem for, **MAURICE C█████, FATHER** having been presented to this Court, the Court finds this request should be granted.

IT IS THEREFORE ORDERED, that **MARGARET SCOTT** be and is hereby removed as Attorney Ad Litem for **MAURICE C█████, FATHER** and that **GERALD URETSKY.** is hereby substituted as Attorney Ad Litem for **MAURICE C█████, FATHER**.

SIGNED this DECEMBER 22, 2014.

JUDGE PRESIDING

CAUSE NO. **2014.PA-00142**

IN THE INTEREST OF

**MALIYAH COLLINS**, ET AL

CHILDREN

IN THE DISTRICT COURT

**288** th JUDICIAL DISTRICT

BEXAR COUNTY, TEXAS

## ORDER OF INDIGENCE

On this date, Respondent/s **MAURICE COLLINS** request for Order of Indigence was presented to this Court. The Court finds this request should be granted for good cause. The court finds that Respondent/s is indigent.

IT IS THEREFORE ORDERED that Respondent/s is hereby indigent.

SIGNED this **27 th** day of **July 2015** .

_____
JUDGE PRESIDING

APPROVED AS TO FORM AND SUBSTANCE:

Gerald Uretsky
Attorney at Law
406 Brees Boulevard
San Antonio, Texas 78209-4828
Phone: (210) 820-8294
Fax: (210) 822-8735
Email: uretsky@msn.com
Bar No. 20414600

_____
ATTORNEY FOR RESPONDENT